## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHL VARIABLE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 08-485-GMS |
| v. | ) ) | |
| WERTHER FAMILY INSURANCE TRUST 2006, and its trustee, NATCITY TRUST COMPANY OF DELAWARE, | ) ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
### MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO REMEDY

Kevin G. Abrams (#2375)
John M. Seaman (#3868)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
Telephone: (302) 778-1000
Facsimile: (302) 778-1001

*Attorneys for Defendants*

Dated: October 2, 2009

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................3

FACTUAL BACKGROUND ........................................................................................................3

      A.     The Parties. ...................................................................................................3

      B.     The Trust and Trustee. ..................................................................................4

      C.     The Commission Payments...........................................................................7

      D.     The Producer's Agreement. ..........................................................................7

ARGUMENT ................................................................................................................................9

I.       STANDARD...................................................................................................................9

II.     APPLICABLE LAW ...................................................................................................10

III.    PHOENIX SHOULD NOT BE PERMITTED TO WITHHOLD
       COMMISSION PAYMENTS FROM PREMIUM REFUNDS EITHER
       AS A MATTER OF LAW OR EQUITY. ..................................................................10

      A.     The Law Requires Phoenix to Refund Premiums in Full, Without
            Withholding Commissions............................................................................10

      B.     Equity Requires Phoenix to Refund Premiums in Full, Without
            Withholding Commissions............................................................................14

IV.    PHOENIX MUST PAY INTEREST ON THE PREMIUMS..........................................16

V.     PHOENIX IS NOT ENTITLED TO ANY "FEES PURSUANT TO THE
       DECLARATORY JUDGMENT STATUTE."................................................................18

VI.    PREMIUMS SHOULD NOT BE DEPOSITED INTO COURT. ....................................19

CONCLUSION................................................................................................................................20

i

# TABLE OF AUTHORITIES

**CASES**                                                     **PAGE(S)**

*153 West 33rd Street Corp. v. Reliable Ins. Co.*,
   286 N.Y.S.2d 694 (N.Y. Civ. Ct. 1967)....................................................................11, 12, 15

*Am. Gen. Life Ins. Co. v. Green*,
   C.A. No. 2:06-CV-02048-MCE-KJM, 2008 WL 2096833 (E.D. Cal. May 16, 2008) .....11, 17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..........................................................................................................10

*Boyle v. County of Allegheny, Pa.*,
   139 F.3d 386 (3d Cir. 1998)..................................................................................................9

*Brandin v. Gottlieb*,
   C.A. No. 14819, 2000 WL 1005954 (Del. Ch. July 13, 2000) ..............................................18

*Bujak v. Old Line Ins. Co. of Am.*,
   C.A. No. 97-3358, 1998 WL 34361139 (E.D. Pa. Apr. 14, 1998) .........................................17

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................................................9

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)..............................................................................................................19

*Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*,
   769 F. Supp. 671 (D. Del. 1991), *aff'd*, 988 F.2d 414 (3d Cir. 1993)....................................15

*In re Dep't. of Energy Stripper Well Exemption Litig.*,
   124 F.R.D. 217 (D. Kan. 1989)......................................................................................19, 20

*Equitable Life Assur. Soc'y of U.S. v. D'Amato*,
   C.A. No. 88-5628, 1989 WL 6586 (E.D. Pa. Jan. 27, 1989) ................................................17

*Eurolines Shipping Co. v. Metal Transp. Corp.*,
   491 F. Supp. 590 (S.D.N.Y. 1980)......................................................................................20

*F.E. Myers Co. v. Pipe Maint. Servs., Inc.*,
   599 F. Supp. 697 (D. Del. 1984).........................................................................................18

*Gelof v. Papineau*,
   648 F. Supp. 912 (D. Del. 1986), *aff'd in relevant part*, 829 F.2d 452 (3d Cir. 1987) .....17, 18

*Goodrich v. E.F. Hutton Group, Inc.*,
   681 A.2d 1039 (Del. 1996) ........................................................................19

*Guys v. New York Life Ins. Co.*,
   99 F.2d 303 (4th Cir. 1938) ......................................................................17

*Hughes Tool Co. v. Fawcett Publ'ns, Inc.*,
   315 A.2d 577 (Del. 1974) .....................................................................15, 16

*LTV Corp. v. Gulf States Steel, Inc. of Ala.*,
   969 F.2d 1050 (D.C. Cir. 1992) ................................................................20

*Lewis v. Hanson*,
   128 A.2d 819 (Del. 1957), *aff'd, Hanson v. Denckla*, 357 U.S. 235 (1958) ...........................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................9, 10

*McKenna v. Firemen's Ins. Co.*,
   63 N.Y.S. 164 (N.Y. Sup. Ct. 1900) ..........................................................12

*Mercantile  Nat'l Bank at Dallas v. Bradford Trust Co.*,
   850 F.2d 215 (5th Cir. 1988) ....................................................................18

*Monarch Life Ins. Co. v. Donahue*,
   708 F. Supp. 674 (E.D. Pa. 1989) .............................................................16

*Montgomery Ward & Co., Inc. v. Pac. Indem. Co.*,
   557 F.2d 51 (3d Cir. 1977) .......................................................................19

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ................................................................................15

*Obara v. Mosely*,
   692 A.2d 414, 1997 WL 70652 (Del. 1997) ................................................17

*Oglesby v. Penn Mut. Life Ins. Co.*,
   877 F. Supp. 872 (D. Del. 1994) ...............................................................11

*Pac. Ins. Co. v. Higgins*,
   C.A. No. 11284, 1994 WL 163635 (Del. Ch. Apr. 25, 1994) .....................17

*Parker Precision Prods. Co. v. Met. Life Ins. Co.*,
   407 F.2d 1070 (3d Cir. 1969) ...................................................................16

iii

*Perlman v. Prudential Ins. Co. of Am.*,
   686 So. 2d 1378 (Fla. Dist. Ct. App. 1997) ...................................................12

*Rollins Envtl. Servs., Inc., v. WSMW Indus., Inc.*,
   426 A.2d 1363 (Del. Super. Ct. 1980) .........................................................18

*Spilka v. S. Am. Managers, Inc.*,
   255 A.2d 755 (N.J. 1969)..............................................................................12

*Those Certain Underwriters at Lloyd's London v. Nat'l Installment Ins. Servs., Inc.*,
   C.A. No. 19804-VCP, 2007 WL 4554453 (Del. Ch. Dec. 21, 2007), *aff'd*, 962 A.2d
   916, 2008 WL 4918222 (Del. Dec. 16, 2008) ...............................................12

*Those Certain Underwriters at Lloyd's, London v. Nat'l Installment Ins. Servs., Inc.*,
   C.A. No. 19804-VCP, 2008 WL 2133417 (Del. Ch. May 21, 2008), *aff'd*, 962 A.2d
   916 (Del. 2008) .............................................................................................17

*U.S. Fidelity & Guar. Co. v. Dye*,
   52 F.2d 567 (9th Cir. 1931) ..........................................................................17

*Wells Fargo Bank, N.A. v. Lincoln Nat'l Life Ins. Co.*,
   C.A. No. CV-08-6637 (C.D. Cal. Apr. 13, 2009) (Order)..........................11, 13, 19

*Wells Fargo Bank, N.A. v. Lincoln Nat'l Life Ins. Co.*,
   C.A. No. CV-08-6637 (C.D. Cal. Dec. 10, 2008) (Countercl.) ...............................13

*In re WorldCom, Inc. Sec. Litig.*,
   354 F. Supp. 2d 455 (S.D.N.Y. 2005)...........................................................11

**STATUTES**

28 U.S.C. §§ 2201.....................................................................................................18

28 U.S.C. §§ 2202.....................................................................................................18

FED. R. CIV. P. 56(a) ................................................................................................9

FED. R. CIV. P. 56(c) ................................................................................................9

FED. R. CIV. P. 56(e) ................................................................................................9

FED. R. CIV. P. 67(a) ................................................................................................19

6 *Del. C.* § 2301(a)....................................................................................................18

12 *Del. C.* § 3313(e)...........................................................................................5, 14, 15

**OTHER AUTHORITIES**

2 COUCH ON INSURANCE § 32:63 (2008)......................................................................16

44 AM. JUR. 2d *Insurance* § 919 ...............................................................................19

17 WILLISTON ON CONTRACTS § 49:143 (4th ed. 2009) ..............................................12

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff PHL Variable Insurance Company ("Phoenix") seeks a declaration that a $10 million life insurance policy issued to Bernard Werther numbered 97518232 (the "Policy"), and held in trust by the Werther Family Insurance Trust 2006 (the "Trust"), should be rescinded *ab initio*.  The alleged bases for the rescission are misrepresentations by Mr. Werther in the insurance application (the "Application") regarding his net worth, income, criminal background and address D.I. 1, ¶¶ 13-16.  Mr. Werther admitted at his deposition that the Application contained material misrepresentations regarding his net worth and income and stated he wanted the Policy rescinded.  The Trust and NatCity Trust Company of Delaware (the "Trustee," or the "Trust Company," together "Defendants") agree the Policy should be rescinded.

Phoenix concedes that upon rescission it must refund the undisputed amount of $538,714.00 in premiums it received on the Policy.  The only questions remaining for the Court are (i) whether Phoenix can deduct from the premium refunds the commissions Phoenix paid to its agents who are not parties to this lawsuit and who have a contract requiring them to return commissions to Phoenix on demand; (ii) whether Phoenix can avoid paying interest on premium payments it has held since August 2006; and (iii) whether Phoenix is entitled to an attorneys' fee award in the absence of a contract or statute requiring the payment of such fees.  The answer to each of these questions is no.

First, as a matter of law, Phoenix cannot withhold premium refunds as an offset to commissions that Phoenix paid to its agents.  It is undisputed that Mr. Werther did not pay the premiums and no premium refund will be paid to him.  Instead, premiums will be refunded directly to the Trust.  The record is also undisputed that the Trust and Trustee had no knowledge or involvement with Mr. Werther's misrepresentations in the Application.  The Trust, which is administered by a professional fiduciary, arranged to finance the premiums using the Policy as

collateral for a bank loan.  If Phoenix does not return the full amount of premiums to the Trust, it will be unable to return amounts loaned to it by the bank.  Under such circumstances, the overwhelming weight of controlling and persuasive authority requires that premiums be returned in full upon rescission, without any deduction of commissions.

Additionally, Phoenix has a contract with its agents which provides that if Phoenix refunds a premium for any reason, the agent must repay any commissions on demand.  Thus, Phoenix has a contract remedy to recover commission payments.  In contrast, the Trust and Trustee have no recourse against the agents.  Because Phoenix paid the same amount in commissions as it received in premiums – $538,714.00 – Phoenix seeks to walk away from a rescinded Policy made whole, while forcing the Trust to finance Phoenix's contractual obligation for its agents' commissions.  Moreover, the Trust and Trustee are innocent third parties who indisputably had no role in Mr. Werther's misrepresentations.  As a matter of law and equity, Defendants should not be responsible for commissions that are Phoenix's cost of doing business.

Second, Phoenix refuses to pay interest on the premium refunds as is required by the law of rescission.  Defendants are entitled to an order requiring Phoenix to pay interest on the premium refunds at the legal rate since August 2006.

Third, there is no statute or common law principle that provides for any fee award.  The Court should deny Phoenix's request for attorneys' fees.

Finally, the Court should reject Phoenix's unnecessary proposal to pay the premium refunds into Court.  The Court need not get involved as the "middle-man" in a simple refund payment.  Phoenix knows that the Trust paid the premiums and should receive any refund.

Defendants respectfully request that the Court rescind the Policy and enter summary judgment in Defendants' favor (a) requiring Phoenix to refund premiums directly to the Trust (i)

in full, (ii) with interest, and (iii) without any deduction for commissions; and (b) denying Phoenix's request for attorneys' fees.

## NATURE AND STAGE OF THE PROCEEDINGS

Phoenix filed this action on August 5, 2008.  D.I. 1.  Defendants answered the Complaint on August 26, 2008, D.I. 6, after which the parties began discovery.  All written party and non-party discovery closed on July 7, 2009.  Ex. 1 at ¶ 1.[1]  The time to take depositions expired on September 11, 2009.  *Id.*  Phoenix took one oral deposition—that of Mr. Werther—in which he admitted the Policy was obtained through misrepresentations.   Ex. 2 at 19-20; 115-116. Following that deposition, and acknowledging that the Trustee had no knowledge of Mr. Werther's misrepresentations, Phoenix waived its opportunity to take a deposition of Defendants' 30(b)(6) representative.  *See* Exs. 3 and 4.  This matter is ripe for summary judgment.

## FACTUAL BACKGROUND

### A.    The Parties.

Phoenix describes itself as a Connecticut insurance company and citizen of Connecticut authorized to transact insurance business in the State of Delaware.  D.I. 1, ¶ 1.

The Trust is a Delaware statutory trust organized under the laws of Delaware and is a citizen of Delaware.  D.I. 6, ¶ 2.  The Trust Company is a Delaware corporation and a citizen of Delaware.  *Id.* ¶ 3.[2]

---

[1] Citations in the form "Ex. __" are to the Affidavit of John M. Seaman in Support of Defendants' Motion for Partial Summary Judgment as to Remedy filed herewith.  Also filed herewith are the Affidavits of Carol Tino ("Tino Aff.") and Richard W. Smith ("Smith Aff.").

[2] When referring to NatCity Trust Company of Delaware in its corporate capacity, we use the term "Trust Company."  When referring to NatCity Trust Company of Delaware in its limited capacity as the trustee of the Trust, we refer to it as the "Trustee."

Mr. Werther is the insured and a Florida resident. Ex. 6. He signed the Application representing that the statements made therein were full, complete and true to the best of his knowledge and were properly recorded. Ex. 5 at 6; Ex. 2 at 15-16.

**B.     The Trust and Trustee.**

Since its inception in 2003, the primary business purpose of the Trust Company was to promote and serve as trustee for trusts with a Delaware situs. It was created to benefit from Delaware's favorable fiduciary laws, often referred to in practice as the Delaware Advantage. Dynasty, Asset Protection, Tax-Advantaged and Directed trusts are the four main types of trusts the Trust Company marketed and specialized in administering. Tino Aff. ¶ 4.

Prior to forming the Trust, the Trust Company was approached by the lender's agent, Coventry, and was asked to serve as the administrative trustee of Delaware Statutory Trusts that Coventry's customers wished to create for holding life insurance policies. The premiums for the policies were to be paid using funds borrowed from La Salle Bank N.A. (the "Lender") (n/k/a Bank of America). The Trust Company never actively promoted premium financed irrevocable life insurance trusts as a product. However, the Trust was drafted as a Directed trust for investment purposes and thus qualified as a Delaware Advantage trust. Tino Aff. ¶ 5.

The Trust was established on July 20, 2006, *see* Tino Aff. Ex. A, and formed pursuant to a Trust Agreement among Mr. Werther, as the grantor; Jeffrey M. Werther, Joseph C. Werther, Tara B. Werther, Tatiana Werther, Damon R. Werther, and Miranda Werther, as the beneficial owners; the Trustee; and Jeffrey Werther, as co-trustee. *See id.* Ex. B.

When opening the account, the Trustee performed the due diligence required, namely verifying the identity of the grantor and insured, and obtaining from the investment advisor the proper documentation directing it as administrative trustee to maintain an unbalanced portfolio holding a single life insurance policy. Tino Aff. ¶ 8. Since the Delaware benefit was investment

direction and not asset protection, the Trust Company's powers and duties were limited by the trust documents.  *See* Tino Aff. Ex. B at Art. II, § 2(d) ("the Trustee … shall not be responsible for or in respect of the validity or sufficiency of … the form, character, genuineness, sufficiency, value or validity of any of the trust estate, and in no event shall the Trustee … assume or incur any liability, duty or obligation other than as expressly provided for herein.").  Thus, responsibility for determining the validity of the trust estate, *i.e.*, the Policy, fell on Phoenix not the Trust.  *See*, *e.g.*, Tino Aff. ¶ 8; *see also* 12 *Del. C.* § 3313(e) (trustee of a directed trust "shall have no duty to … [c]ommunicate with or warn or apprise any beneficiary or third party concerning instances in which the fiduciary would or might have exercised the fiduciary's own discretion in a manner different from the manner directed by the adviser.").[3]  Accordingly, in forming the Trust, Mr. Werther provided the Trustee with copies of his driver's license to confirm his identity as required by law.  *See* Tino Aff. ¶¶ 8 & 9; *id.* Exs. C & D.  In any event, the Trust Company had no reason to believe any issues existed regarding the veracity of Mr. Werther's statements on his Application, particularly since Phoenix did not raise the issue during the underwriting process.  *See id.* ¶ 8.  In fact, Defendants had no knowledge that any statements by Mr. Werther in the Application were false or misleading.  *Id.* ¶ 15.

Furthermore, when the Trustee signed the Application as the policy owner, it affirmed: "I have reviewed this application and ***the statements made herein are those of the proposed***

---

[3] Delaware's statute regarding directed trusts, 12 *Del. C.* § 3313(e) further provides:

Absent clear and convincing evidence to the contrary, the actions of the fiduciary pertaining to matters within the scope of the adviser's authority (such as confirming that the adviser's directions have been carried out and recording and reporting actions taken at the adviser's direction), shall be presumed to be administrative actions taken by the fiduciary solely to allow the fiduciary to perform those duties assigned to the fiduciary under the governing instrument and such administrative actions shall not be deemed to constitute an undertaking by the fiduciary to monitor the adviser or otherwise participate in actions within the scope of the adviser's authority.

*insured and all such statements made by the proposed insured* in Part I or and in Part II of this application *are full, complete and true to the best knowledge and belief of the undersigned and have been correctly recorded*." Ex. 5 at 6 (emphasis added). The Trustee thus twice affirmed that it had no knowledge of any misrepresentations by Mr. Werther—once in the Application and again in the Tino Affidavit at ¶ 15. There is no record evidence to the contrary.

Mr. Werther instructed the Trust to form two series of sub-trusts to hold life insurance policies. The first sub-trust relates to a policy issued by another insurance company not relevant to this action. Pursuant to a Second Supplement to Trust Agreement, Mr. Werther instructed the Trustee to establish a series of trust entitled "Werther Family Insurance Trust 2006, Premium Finance Sub-Trust II" (the "Sub-Trust"). *Id.* at Exs. E & F.

Mr. Werther also directed the Trustee to cause the Sub-Trust to enter into a Note and Security Agreement between the Trust and the Lender. Pursuant to the Note and Security Agreement the Sub-Trust borrowed money from the Lender (the "Loan"), the proceeds of which were used to pay premiums on the Policy. Tino Aff. ¶ 14. For so long as the Loan is outstanding, the Trustee allocated the Policy to the Sub-Trust to hold as collateral for the Loan. *See id.* at Ex. G. On August 9, 2006, Phoenix issued Policy No. 97518232 to Mr. Werther as the insured and to the Trust as the owner of the Policy. *Id.* at Ex. H.

Pursuant to the terms of the Note and Security Agreement, the Sub-Trust borrowed funds from Lender and caused those funds to be paid to Phoenix as premiums on the Policy. On August 31, 2006, the Trust received a cash deposit from the Lender in the amount of $538,714.00. That same day, the Trust disbursed $538,714.00 as payment for the Policy. The Trust received administration fees in the amount of $631.95. Tino Aff. ¶ 14.

When the Policy is rescinded, the refund should be made payable to the Trust so the Loan can be satisfied.  No portion of the Policy refund will be paid to Mr. Werther.  Tino Aff. ¶ 16.

## C.    The Commission Payments.

Only in the *ad damnum* clause of the Complaint does Phoenix mention that it seeks to deduct from premiums deposited with the Court an amount equal to the commissions paid to its agents.  The absence of any allegations identifying a contractual or other legal basis for withholding commissions is telling—there are none.  Indeed, Phoenix has pled no facts regarding its alleged entitlement to a commission refund such as (i) the existence of any contract forming the legal basis for a commission payment, (ii) the terms of any commission agreement, (iii) the parties to that agreement, (iv) a breach of a commission agreement, (v) who received the commission payments, or even (vi) how much was paid in commissions.  Importantly, no provision in the Policy or in any other contract with Defendants permits Phoenix to withhold commissions from policy refunds.

Nevertheless, Phoenix admitted paying $538,714.00 in commissions on the Policy:

> 14. Identify the total amount of sales commissions paid by Phoenix relating to the Werther Application and/or the Werther Policy and the recipients of those commissions.
>
> RESPONSE:  $538,714.00  paid  to  Richard  W.  Smith/The Producers Group Advantage, LLC.

Ex. 7 at Irrog. Resp. 14.  Phoenix further admits that it did not pay Defendants any commissions in connection with the sale of the Policy.  Ex. 8 at Resp. 1.  Yet, Phoenix seeks to recover those commission payments from Defendants.

## D.    The Producer's Agreement.

Phoenix paid commissions on the Policy to its agent, Richard W. Smith, the "Producer," pursuant to an agreement titled "Wealth Management Partner Compensation Schedules" (the

"Producer's Agreement").  Smith Aff. ¶¶ 1-4; *id.* at Ex. A.  Mr. Smith does business through The

Producer's Group Advantage, LLC ("TPGA") and must be duly licensed in order to be one of

Phoenix's producers.  Smith Aff. Ex. A at PHL 2846, ¶ 1(a).

Under the Producer's Agreement, commissions are paid pursuant to a schedule.  *See id.* at

PHL 2861.  According to Mr. Smith, Phoenix paid TPGA a commission equal to 50% of the first

year premiums, or $269,357.00.  Smith Aff. ¶ 9(d).[4]

In addition, under the Producer's Agreement, Mr. Smith was permitted to engage sub-

producers to solicit and sell insurance policies.  *See id.* ¶ 6; Ex. A at PHL 2853, ¶ 1.  Bruce

Burns of Wholesale Life Insurance Brokerage was the sub-producer on the Policy.  *See id.* ¶¶ 6

& 12; Ex. 9 at PHL 2811.  As authorized by the Producer's Agreement, Mr. Smith split the

commission on the Policy with Mr. Burns.  *See* Smith Aff. ¶ 12.  Mr. Smith retained a portion of

the commission in the amount of $34,343.01 and paid $228,953.45 to Mr. Burns. *Id.*

The Producer's Agreement specifically addresses Phoenix's contractual remedy against a

producer if premiums are refunded.  Section 7(a) provides as follows:

> Should the Company for any reason refund any premium on any
> policy sold or annuity hereunder, You shall repay on demand any
> commissions or any other compensation received therein,
> including, but not limited to, the refund of any premiums under
> any Free Look Provision.  You shall also refund any advanced
> commissions or other compensation which became unearned
> because of non-payment of premiums.

Smith Aff. Ex. A at PHL 2857.  Defendants are not parties to the contract have no privity with

Mr. Smith or TPGA by which they could otherwise seek to recover any commission payments.

---

[4] It is immaterial for purposes of this motion whether TPGA received a 50% commission, as Mr.
Smith states, or a 100% commission, as Phoenix states.  Either way, Phoenix is not entitled to withhold
any commissions from the premium refund.

In addition, beginning around February 2008, Phoenix began withholding from TPGA commissions from other insurance policies that would otherwise be payable to TPGA. *See* Smith Aff. ¶ 14. Phoenix has provided no formal or written explanation of these withholdings, *id.*, and has refused to respond to interrogatory responses explaining this practice. Ex. 7 at Irrog. Resp. 19. Nonetheless, Phoenix is withholding these commissions in lieu of and in anticipation of charging back commissions paid to TPGA on the Policy. Smith Aff. ¶ 14. As sworn by Mr. Smith, Phoenix has already withheld at least $168,599.76 in commissions payable to TPGA on other policies. *Id.* at ¶ 15. Phoenix, therefore, tries to hide the fact that it seeks a double recovery by withholding commissions in this action and withholding other commissions directly from TPGA.

## ARGUMENT

## I.    STANDARD

The summary judgment standard is well known to the Court. Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Boyle v. County of Allegheny, Pa.*, 139 F.3d 386, 392 (3d Cir. 1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted). Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. *See* FED. R. CIV. P. 56(a).

On this motion, Defendants bear the initial burden of proving that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once the Defendants have done

so, Phoenix "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Phoenix must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S.. at 587 (quoting FED. R. CIV. P. 56(e)).   Phoenix cannot do so.

The material facts regarding the premium payments and commission payments are undisputed.   The record also demonstrates that Defendants had no role whatsoever in Mr. Werther's misrepresentations and Phoenix has waived its opportunity to take a deposition of Defendants to attempt to prove otherwise.

As shown below, Phoenix is not entitled to any economic relief, whether in the form of refunded commissions or attorneys' fees.   Defendants are entitled to summary judgment that all premiums must be refunded with interest and without withholding any commissions.

## II.    APPLICABLE LAW.

Phoenix contends, and Defendants do not dispute, that the Policy is governed by Delaware law.   *See* D.I. 1, ¶ 9 ("… the insurance policy at issue is governed by Delaware law.") Defendants agree that Delaware law should apply to an insurance policy governed by Delaware law that is owned by a Delaware trust.   *See Lewis v. Hanson*, 128 A.2d 819, 826 (Del. 1957), *aff'd*, *Hanson v. Denckla*, 357 U.S. 235 (1958).   Accordingly, the Court should apply Delaware substantive and procedural law to Phoenix's request for rescission and other declaratory relief.

## III.   PHOENIX SHOULD NOT BE PERMITTED TO WITHHOLD COMMISSION PAYMENTS FROM PREMIUM REFUNDS EITHER AS A MATTER OF LAW OR EQUITY.

### A.    The Law Requires Phoenix to Refund Premiums in Full, Without Withholding Commissions.

Phoenix concedes that upon rescission it must refund the premiums it received.   D.I. 1 at 6 ¶ (b).   Indeed, it is well recognized that rescission of an insurance policy requires the insurer to

refund premiums.  *See Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 890 (D. Del. 1994)

(because of misrepresentations in application by the insured, court ordered policy rescinded and

ordered insurer to refund premiums); *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 465

(S.D.N.Y. 2005) ("to effect rescission, the insurer must repudiate the contract and return the

insurance premium"); *Am. Gen. Life Ins. Co. v. Green*, C.A. No. 2:06-CV-02048-MCE-KJM,

2008 WL 2096833, at *9 (E.D. Cal. May 16, 2008) (holding insured was entitled to return of

premiums plus interest notwithstanding multiple material misrepresentations in life insurance

application) (Ex. 14).  "Even when an insured has engaged in fraud to acquire the insurance

policy, the rescission of an insurance contract results in the full return of premiums." *Wells

Fargo Bank, N.A. v. Lincoln Nat'l Life Ins. Co.*, C.A. No. CV-08-6637, slip op. at 6 (C.D. Cal.

Apr. 13, 2009) (Ex. 10).

Phoenix cannot deduct from the premium refunds the amount of the commissions

Phoenix paid to its agents.  The reason is simple.  There is no legal basis to saddle the Trust and

the Lender with responsibility for Phoenix's third-party contractual obligations.  Phoenix can

pursue a remedy against its agents under the Producer's Agreement.  Defendants are not parties

to that agreement and had no obligations regarding commission payments.

Recognizing that commission payments are not the obligation of the policy holder, the

law strongly supports Defendants' position that upon rescission, commissions may not be offset

against premium refunds.  The principle was stated clearly by one court as follows:

> Any rights that the insurance company may have against its agent
> for money owed by the agent must be pursued by the company.  It
> cannot be converted into the insured's burden.  ***The carrier cannot
> palm off on the insured claims that the insurance company has
> against its agent or former agent which may have resulted from
> the company's poor business practices***.  In short, payment is not
> effected by assigning to the insured a claim the company may have
> against the agent.

*153 West 33rd Street Corp. v. Reliable Ins. Co.*, 286 N.Y.S.2d 694, 696 (N.Y. Civ. Ct. 1967).

Accordingly, "**it has been held that an insurance company may not deduct commissions paid to an agent from the amount of the unearned premiums due the insured**." *Id.* (emphasis added). The law is no different in Delaware. *See Those Certain Underwriters at Lloyd's London v. Nat'l Installment Ins. Servs., Inc.*, C.A. No. 19804-VCP, 2007 WL 4554453, at *13 (Del. Ch. Dec. 21, 2007) ("as a part of a rescission, **the insured should be refunded its entire premium (including commissions)**") (emphasis added), *aff'd*, 962 A.2d 916, 2008 WL 4918222 (Del. Dec. 16, 2008) (Ex. 20); *see also* 17 WILLISTON ON CONTRACTS § 49:143 (4th ed. 2009) ("The policyholder is entitled to the entire unearned premium as that term is defined in the policy, without any deduction for commissions attributable to it."); *Perlman v. Prudential Ins. Co. of Am.*, 686 So.2d 1378, 1381 (Fla. Dist. Ct. App. 1997) (in action by insured for rescission based on misrepresentation by brokers, court held that commission payments to broker could not be deducted from premium refunds); *Spilka v. S. Am. Managers, Inc.*, 255 A.2d 755, 759 & n.4 (N.J. 1969) (upon cancellation of policy, court awarded judgment against insurer for the full amount of the unearned premiums noting "[c]learly this means the entire unearned premium … without any deduction for commissions attributable to it."); *McKenna v. Firemen's Ins. Co.*, 63 N.Y.S. 164 (N.Y. Sup. Ct. 1900) (holding that upon cancellation of insurance policy, deduction of commissions from premium refund was not authorized by any provision in the policy or under insurance law). So too here. No provision of the Policy or insurance law allows Phoenix to offset commissions against premium refunds, particularly where the premiums were paid by an innocent third-party payor.

The recent unreported decision in *Wells Fargo* is instructive. In that case, as here, a life insurance company sought a declaration of rescission on the grounds that, among other things,

there were material misrepresentations in the insurance applications.  *Wells Fargo* Order at 2 (Ex. 10).  The insurance company, however, sought to retain "some or all of the premiums paid on the Policies as an off-set to the costs and expenses Lincoln has incurred as a result of the issuance of the Policies."  *Wells Fargo* Countercl. at 50, ¶ C (Ex. 11).  As here, the professionally administered trusts agreed that the policies should be rescinded and sought return of premiums.  *Wells Fargo* Order at 2*.*  Lincoln sought to justify its unlawful retention of premiums because the policies were procured by fraud and because a California rescission statute permits a court to "balance the equities" between the parties. *Wells Fargo* Order at 6-7.[5]

The Central District of California rejected Lincoln's arguments and granted the trustees' motion to strike Lincoln's claim to withhold any portion of the premiums.  In doing so, the district court held that even where there has been fraud to acquire an insurance policy, "the rescission of an insurance contract results in the *full return* of premiums."  *Id.* at 6 (emphasis added) ("In the realm of insurance contracts, rescission requires the insurer to pay the full amount of the premiums to the insured, unless the insurer is able to quantify insurance benefits granted to the insured…. Nowhere in its counter-complaint does Lincoln state that it disbursed any type of insurance coverage that entitles it to retain premiums.")  The same is true here. Nothing in the Policy entitles Phoenix to retain any portion of the premiums if the Policy is rescinded for any reason, including misrepresentations in the Application.

Moreover, as explained above, Phoenix has a contractual agreement with the Producer that requires it to "pay on demand any commissions or any other compensation received" if Phoenix "for any reason refund[s] any premium on any policy…."  Smith Aff. Ex. A at PHL

---

[5] The facts in *Wells Fargo* were slightly different in that the premiums were not paid through third-party premium financing.  Defendants submit that the argument for a full return of premiums is even stronger when the source of the premium payments is a bank loan.

2857.  Even under the terms of the Producer's Agreement, Phoenix has not satisfied either of the pre-requisites for recovering commissions from the Producer.  It has not refunded any premium on the Policy, nor is there any evidence that it made any demand on the Producer that commissions be returned.  Thus, under the terms of the Producer's Agreement Phoenix's claim to recover commissions would be unripe until the refund has been paid and Phoenix demands repayment.  If a commission refund is unavailable under the terms of the Producer's Agreement it should not be available here.  Further, the Producer is not a party to this action and the Court should not adjudicate a claim under the Producer's Agreement without the Producer here to defend itself.  In sum, there is no contractual or other legal basis to make Defendants responsible for the commission payments.

**B.      Equity Requires Phoenix to Refund Premiums in Full, Without Withholding Commissions.**

The Trust and Trustee bear no equitable responsibility for the commission payments because the Trust and Trustee had no knowledge of Mr. Werther's misrepresentations in connection with his Application.  *See* Tino Aff. ¶ 15.  Nor would Defendants have had any reason to question the representations made by Mr. Werther in the Application.  *Id.* ¶ 8.  As explained by Ms. Tino, the Trust was a "Directed Trust" not an "Asset Protection Trust."  *See* Tino Aff. ¶ 5.  Accordingly, the Trustee's duties and powers were limited to those set forth in the trust documents.  *Id.* Ex. B at Art. II, § 2(d); *see also* 12 *Del. C.* § 3313(e).  And, for purposes of forming the Trust, Mr. Werther's net worth and income were immaterial.  In fact, there is no record evidence that Mr. Werther ever had any communications with the Trust.  *See, e.g.,* Ex. 2 at 98-99 (Mr. Werther testifying he had no interaction with the Trust or Trustee regarding his net worth); *id.* at 110-111 (testifying that he never provided the Trustee with any information about his net worth or income and did not instruct the Trustee to provide that information to Phoenix).

Mr. Werther further testified that his "financial advisor" David Claus and/or his colleague Jason Mitan were responsible for creating the false financial statements regarding Mr. Werther's net worth. *Id.* at 156-58, 57; Ex. 12. No record evidence suggests that Defendants (or Plaintiff) had any knowledge of these misrepresentations. Clearly, Phoenix relied on the information provided by Mr. Werther about his net worth and issued the Policy. Similarly, the Trust and Trustee had no reason to question the information provided in the Application. Tino Aff. ¶ 8. The difference, however, is that Phoenix had a duty to investigate Mr. Werther's responses; the Trustee did not. *See*, *e.g.*, 12 *Del. C.* § 3313(e). Even with its team of underwriters, Phoenix missed the fraud. Defendants should not suffer the economic consequences of failing to identify a fraud that Phoenix itself did not detect.

Moreover, commissions are not the Trust's contractual obligation; they are simply one of Phoenix's many overhead costs, like employee salaries, utilities or rent. Had its underwriters properly performed their jobs, Phoenix could have determined that Mr. Werther was not worth $38 million, would not have issued the policy, and would not have paid any commissions. *See 153 West 33rd Street Corp.*, 286 N.Y.S.2d at 696 ("The carrier cannot palm off on the insured claims that the insurance company has against its agent or former agent which may have resulted from the company's poor business practices."). In fashioning a remedy, there is no equitable basis to shift Phoenix's contractual obligations to innocent parties like the Trust and Trustee.

"It is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law…." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (internal quotations omitted); *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 769 F. Supp. 671, 713 (D. Del. 1991) ("The Court may only invoke its equity powers when there is no adequate remedy at law."), *aff'd*, 988 F.2d 414 (3d Cir. 1993). Phoenix

has an adequate remedy at law under the Producer's Agreement pursuant to which it can obtain "full, fair and complete relief." *Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 315 A.2d 577, 579 (Del. 1974). In fact, Phoenix has already recovered a portion of its commissions from the Producer. *See* Smith Aff. ¶¶ 14-15. This potential remedy against the Producer—a remedy the Trust lacks—is further reason why it is inequitable to shift commission costs to Defendants.

## IV.   PHOENIX MUST PAY INTEREST ON THE PREMIUMS.

Apart from the issues regarding commissions, the parties dispute whether Phoenix is required to pay interest on premium refunds and, if so, what interest rate to apply. Defendants submit that upon rescission, Phoenix must refund premiums with interest at the Delaware statutory rate as of the date payment was received—August 31, 2006.

Phoenix's Complaint obliquely acknowledges its obligation to pay interest on premium refunds. *See* D.I. 1. at 6 ¶ (b) (seeking "an order that Phoenix deposit with the Clerk of the Court all premiums paid on the policy *along with required interest, if any*") (emphasis added). Despite this equivocation, there should be no doubt that "where a life insurance policy is rescinded for misrepresentations in the application, the insurer is obligated not only to refund the premium, but to pay the insured the interest earned on the premium from the date of receipt." 2 COUCH ON INSURANCE § 32:63 (2008); *Parker Precision Prods. Co. v. Met. Life Ins. Co.*, 407 F.2d 1070, 1072 (3d Cir. 1969) (affirming order rescinding life insurance policy for misrepresentations regarding applicant's health and requiring refund of premiums, plus interest); *Monarch Life Ins. Co. v. Donahue*, 708 F. Supp. 674, 675 (E.D. Pa. 1989) (rescission based on misrepresentations was "contingent upon Monarch's refunding to the Donahue's the $44,000 premium received, *and*

*paying interest thereon* from the date of receipt … to the date of reimbursement computed at the statutory rate of six-percent.") (emphasis added).[6]

The holding in this long line of cases comports with the law of rescission in Delaware that "a party wishing to rescind a contract must return the opposite party to the status quo ante." *Those Certain Underwriters at Lloyd's, London v. Nat'l Installment Ins. Servs., Inc.*, C.A. No. 19804-VCP, 2008 WL 2133417, at *3 n.16 (Del. Ch. May 21, 2008), *aff'd*, 962 A.2d 916, 2008 WL 4918222 (Del. 2008) (Ex. 21); *Obara v. Mosely*, 692 A.2d 414, 1997 WL 70652, at *1 (Del. 1997) (when granting rescission "[t]he court must substantially restore the prior position of *all parties* in its grant of rescissionary relief.") (emphasis added) (Ex. 18). In Delaware, as elsewhere, to return the parties to the status quo, an insurer rescinding a policy must pay interest on the premiums it retained. *See Pac. Ins. Co. v. Higgins*, C.A. No. 11284, 1994 WL 163635, at *5 (Del. Ch. Apr. 25, 1994) (in an action for rescission of professional liability policy, noting that the insurer had "delivered to the court a check for the premiums paid by defendant Higgins to [the insurers], *plus any interest* which would have accrued on said premiums.") (emphasis added) (Ex. 19). To restore the status quo, a rescission order must include an interest component.

---

[6] *See also Guys v. New York Life Ins. Co.*, 99  F.2d 303, 304 (4th Cir. 1938) (in action to rescind policy based on false statements by insured regarding his health, court affirmed award of interest on premiums at the statutory legal rate); *U.S. Fidelity & Guar. Co. v. Dye*,  52 F.2d 567, 570 (9th Cir. 1931) (stating, in an action to rescind a life insurance policy, "the principal, together with the legal rate of interest for the time the premium was held, must be tendered."); *Am. Gen. Life Ins. Co.*, 2008 WL 2096833, at *9 (requiring "refund of premiums paid for the Policy plus accrued interest" when policy was declared void *ab initio* for fraud); *Bujak v. Old Line Ins. Co. of Am.*, C.A. No. 97-3358, 1998 WL 34361139, at *4 (E.D. Pa. Apr. 14, 1998) (awarding summary judgment for rescission based on misrepresentations regarding the insured's health and ordering that "defendant shall have no further obligations to plaintiff on that policy beyond tendering to her the premiums paid for the policy *plus interest at the relevant statutory rate*.") (emphasis added) (Ex. 15); *Equitable Life Assur. Soc'y of U.S. v. D'Amato*, C.A. No. 88-5628, 1989 WL 6586, at *3 (E.D. Pa. Jan. 27, 1989) (ordering rescission of life insurance policy and ordering insurer to refund premiums "*plus interest at the lawful rate*") (emphasis added) (Ex. 17).

Nothing in the Policy establishes an appropriate interest rate and Phoenix has refused to respond to reasonable discovery requests regarding an appropriate rate of interest.  *See, e.g.* Ex. 7, Irrog. Resp. 20.  In setting the applicable rate of interest, this Court should apply Delaware law.  *See Gelof v. Papineau*, 648 F. Supp 912, 929 (D. Del. 1986), *aff'd in relevant part*, 829 F.2d 452, 456 (3d Cir. 1987).  Absent evidence regarding applicable interest rates, the Court should apply the statutory rate of interest pursuant to 6 *Del. C.* § 2301(a).  *See F.E. Myers Co. v. Pipe Maint. Servs., Inc.*, 599 F. Supp. 697, 704 (D. Del. 1984).  The legal rate of interest is 5% over the Federal Reserve discount rate.  *See* 6 *Del. C.* § 2301(a).

On August 31, 2006, the date the premiums were paid, the Federal Reserve discount rate was 6.25%.  *See* Ex. 13 (listing historical Federal Reserve discount rates).  Thus, the legal rate of interest was 11.25% per annum.  *See* 6 *Del. C.* § 2301(a).  The legal interest rate in Delaware is simple, not compound.  *See Brandin v. Gottlieb*, C.A. No. 14819, 2000 WL 1005954, at *29 (Del. Ch. July 13, 2000) (Ex. 16).  Furthermore, when "the rate of interest is calculated according to the Federal Reserve discount rate as of the date of commencement of interest liability [ ] it remains fixed at that rate" – it does not change over time as the interest rate changes.  *Rollins Envtl. Servs., Inc., v. WSMW Indus., Inc.*, 426 A.2d 1363, 1368 (Del. Super. Ct. 1980).

Based on the foregoing, Defendants are entitled to judgment as a matter of law that Phoenix must refund premiums of $538,714.00, plus simple interest at 11.25% per annum, from August 31, 2006 until the date of payment.

## V.    PHOENIX IS NOT ENTITLED TO ANY "FEES PURSUANT TO THE DECLARATORY JUDGMENT STATUTE."

In paragraph 19 of its Complaint, Phoenix "also seeks its fees pursuant to the Declaratory Judgment Statute."  D.I. 1, ¶ 19.  However, nothing in 28 U.S.C. §§ 2201 or 2202 provides any statutory authority for a district court to automatically award attorneys' fees.  *See Mercantile*

*Nat'l Bank at Dallas v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988) (prevailing party in application for declaratory relief is entitled to attorneys' fees only where fees are allowed under the American rule, or where controlling substantive law permits recovery); *see also Wells Fargo* Order at 7-8 (striking life insurance company's request for attorneys' fees in action for rescission based on misrepresentation by insureds).

Absent a federal statutory basis for awarding attorneys' fees, state rules concerning the award of attorneys' fees generally are applied in diversity cases. *See Montgomery Ward & Co., Inc. v. Pac. Indem. Co.,* 557 F.2d 51, 56-57 (3d Cir. 1977). Delaware follows the "American Rule," in which "prevailing litigants are responsible for the payment of their own attorney's fees." *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1043-44 (Del. 1996). Here, no exception exists to diverge from the American Rule: creation of a common fund; willful violation of a court order; or when a party has acted in bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Equally important, there is no equitable basis to shift the burden for Phoenix's attorneys' fees to Defendants who indisputably had no part in Mr. Werther's fraud.

## VI.   PREMIUMS SHOULD NOT BE DEPOSITED INTO COURT.

The Policy should be rescinded and premiums refunded in full with interest, but the Court should not require any payment into Court because there is no dispute who is entitled to the premium refund – it is the Trust. It is commonly understood that "[i]f the insurance company is not entitled to retain the premiums paid, the person who procured the policy and paid the premiums is the party who is entitled to their return. Usually, the refund is due to the insured, although another person who has paid the premium in good faith may be entitled to it…." 44 AM. JUR. 2d *Insurance* § 919. It is undisputed that the Trust paid 100% of the premiums with proceeds from the Loan. *See* Tino Aff. ¶ 14; *id.* Ex. G. Accordingly, the Trust is entitled to the refund. *See id.* ¶¶ 14, 16. The Court need not get involved in a simple refund payment.

By seeking to deposit the premiums into Court, Phoenix appears to invoke FED. R. CIV. P. 67(a).  But Rule 67 "does not authorize a deposit into court when no action has been brought seeking a judgment for a sum of money."  *In re Dep't. of Energy Stripper Well Exemption Litig.*, 124 F.R.D. 217, 218 (D. Kan. 1989); *see also Eurolines Shipping Co. v. Metal Transp. Corp.*, 491 F. Supp. 590 (S.D.N.Y. 1980) (holding Rule 67 did not authorize a deposit into court where there was no action seeking a money judgment and where the party might have other remedies available).  Here, the Complaint is not an action for damages or a money judgment and Phoenix can pursue its commissions through claims against the Producer.  Thus, Phoenix improperly attempts to use Rule 67 to obtain substantive relief regarding commissions to which it is not otherwise entitled.  *See LTV Corp. v. Gulf States Steel, Inc. of Ala.*, 969 F.2d 1050, 1063 (D.C. Cir. 1992) ("The Rule 67 procedure provides a place of safekeeping for disputed funds pending the resolution of a legal dispute, *but it cannot be used as a means of altering the contractual relationships and legal duties of the parties*.") (emphasis added, citation omitted).  If Phoenix claims an entitlement to a refund of the commissions it paid to its agent, Phoenix can pursue that relief elsewhere.  Phoenix cannot obtain that relief under Rule 67.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court rescind the Policy and enter summary judgment in favor of Defendants and against Plaintiff that:

a.  No portion of the premiums refunded are to be paid to Phoenix as reimbursement for commissions Phoenix paid to its agents;

b.  Phoenix is required to return the premiums in full, plus interest at the Delaware legal rate from August 31, 2006 until the date the premiums are returned;

c.  Phoenix is not entitled to any award of attorneys' fees; and

d.  Payment of the premium refund shall be made directly to the Trust and shall not be paid into Court.

Respectfully submitted,


  _/s/ John M. Seaman_____
Kevin G. Abrams (#2375)
John M. Seaman (#3868)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
Telephone: (302) 778-1000
Facsimile: (302) 778-1001
abrams@abramslaster.com
seaman@abramslaster.com

Dated: October 2, 2009                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, John M. Seaman, hereby certify that October 2, 2009, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered participants; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

Richard D. Heins
Tiffany Geyer Lydon
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

David T. McDowell
Thomas F.A. Hetherington
Jarrett E. Ganer
EDISON, MCDOWELL &
HEATHERINGTON LLP
Phoenix Tower
3200 Southwest Freeway, Suite 2920
Houston, TX  77027

 _/s/ John M. Seaman_
John M. Seaman (#3868)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
Telephone: (302) 778-1000
seaman@abramslaster.com