## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PHL VARIABLE INSURANCE )
COMPANY, )
                      )
           Plaintiff, )
                      )
v. )         C.A. No. 08-485-GMS
                      )
WERTHER FAMILY INSURANCE )
TRUST 2006, and its trustee, NATCITY )
TRUST COMPANY OF DELAWARE, )
                      )
           Defendants. )

### PLAINTIFF PHL VARIABLE INSURANCE COMPANY'S MOTION FOR RULE 56(f) RELIEF AND PARTIAL RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

ASHBY & GEDDES
Richard D. Heins (I.D. #3000)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rheins@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff PHL Variable Insurance Company*

*Of Counsel:*

David T. McDowell
Jarrett E. Ganer
EDISON, MCDOWELL & HETHERINGTON LLP
3200 Southwest Freeway, Ste 2920
Houston, Texas 77027
(713) 337-5580
david.mcdowell@emhllp.com
jarrett.ganer@emhllp.com

Dated: October 21, 2009

{00343551;v1}

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................1

FACTUAL BACKGROUND .......................................................................................................3

   I.    Stranger Owner Life Insurance............................................................................... 3

   II.   Fraud in Both the Werther Trust's Establishment and the Policy Application .................... 4

   III.   The Policy was Issued as Part of a Fraudulent Scheme in which both the Werther Trust and NatCity were Complicit ........................................................................................ 7

ARGUMENT ...............................................................................................................................10

   I.    Summary Judgment is Proper on the Issue of Rescission........................................ 10

   II.   The Court has Discretion to Order an Equitable Form of Rescission ................................ 11

   III.   A Rule 56(f) Continuance is Necessary to Rebut Defendants' Motion with Respect to the Appropriate Form of Rescission................................................................................ 14

     A.    Rule 56(f) Standard ................................................................................... 15

     B.    Rule 56(f) Proof........................................................................................ 17

       (1)   Rule 56(f) Relief Will Permit Phoenix to Obtain Information About the Nature and Scope of the Fraud ...................................................................................... 17

       (2)   The Information Will Rebut Summary Judgment by Revealing a Lack of Insurable Interest in the Policy and Confirming that the Equities Support Offsetting Refunded Premiums ........... 18

       (3)   The Information was not Previously Obtained Because the Parties Agreed to Postpone Certain Discovery ...................................................................................... 19

CONCLUSION ...........................................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**

*American Mut. Life Ins. Co. v. Mead*, 79 N.E. 526 (Ind. Ct. App. 1906)................................... 12

*Baltimore Life Ins. Co. v. Floyd*, 91 A. 653 (Del. 1914) .................................................... 4, 18

*Bosse v. Knights & Ladies of Sec.*, 220 S.W. 993 (Mo. Ct. App. 1920)................................... 12

*Bruer v. Kansas Mut. Life Ins. Co.*, 75 S.W. 380 (Mo. Ct. App. 1903) ............................... 12, 18

*Carpenter v. Providence Wash. Ins. Co.*, 41 U.S. 495 (1842) ................................................... 10

*Columbian Nat 'l Life Ins. Co. v. Mulkey*, 91 S.E. 106 (Ga. 1916)............................................ 12

*DeLoach v. Ozark Life Ins. Co.*, 230 S.W. 268 (Ark. 1921)...................................................... 12

*Doe v. Abington Friends School*, 480 F.3d 252 (3d Cir. 2007) ........................................ 15, 16

*Dowling v. City of Philadelphia*, 855 F.2d 136 (3d Cir. 1988).................................................... 16

*Eastern States Petroleum Co., Inc. v. Universal Oil Products Co.*, 49 A.2d 612 (Del. 1946)................ 11

*Edward G. Budd Bldg. & Loan Ass'n v. Kinsella*, 156 A. 577 (Pa. Super. Ct. 1931) ............................. 12

*Elliott v. Knights of Modern Maccabees*, 46 Wash. 320 (Wash. 1907).................................... 12

*Endress v. Ins. Co.*, 1 Ohio Law Abs. 553 (Ohio Ct. App. 1923) ...................................... 12, 18

*First Penn. Pac. Life Ins. Co. v. Evans*, 313 F. App'x 633 (4th Cir. 2009)................................... 4

*Grigsby v. Russell*, 22 U.S. 149 (1911)..................................................................... 4, 18

*Healy v. Healy*, No. 19816, 2006 WL 3289623 (Del. Ch. Oct. 31, 2006)................................... 19

*Hegarty v. Am. Commonwealth Power Corp.*, 163 A. 616 (Del. 1932) ............................... 11, 18

*Hellman v. Nat'l Council of Knights and Ladies of Sec.*, 200 S.W. 698 (Mo. Ct. App. 1918)................ 12

*Henkel v. Stratton*, 612 F. Supp. 190 (N.D. Ohio 1985).......................................................... 12

*Hering v. Harris*, 175 A. 169 (N.J. 1934)............................................................................. 11

*Hohenschutz v. Knights of Columbus*, 186 S.W.2d 177 (Ark. 1945) ...................................... 12

*Home Ins. Co. v. Cavin*, 167 Miss. 202, 206 (1933)............................................................. 12

*Kelly v. International Re-Insurance Corporation*, 174 A. 267 (Del. 1934) ............................... 12

*Kosmoski v. Express Times Newspaper*, No. 08-CV-1555, 2009 WL 2603152 (E.D. Pa. Aug. 24, 2009) ................................................................................................................................. 16

*Lewis v. Phoenix Mut. Life Ins. Co.*, 39 Conn. 100 (1872) ................................................ 12, 18

*Lincoln Life and Annuity Co. of N.Y. v. Teren*, No. 37-2008-83905-CU-CO-CTL, slip op. (Cal. App. Dep't Super. Ct. Aug. 27, 2009) ......................................................................................... 13, 19

*Lincoln National Life Insurance Co. v. Calhoun*, 596 F. Supp. 2d 882 (D.N.J. 2009) ........................... 18

*Little v. Liquid Air Corp.,* 37 F.3d 1069 (5th Cir. 1994) ............................................................ 14

*Lunderstadt v. Colafella*, 885 F.2d 66 (3d Cir. 1989) ............................................................... 16

*Marling v. Metropolitan Life Ins. Co.*, 1908 Ohio Misc. LEXIS 46 (Ohio Ct. C.P. 1908) .................... 12

*McDonald v. Northern Benefit Ass'n.*, 131 P.2d 479 (Mont. 1942) ............................................... 12

*McNellis v. Pfizer, Inc.*, No. 05-1286, 2005 WL 3752269 (D.N.J. Dec. 29, 2005) ......................... 16, 20

*Miller v. Beneficial Mgmt. Cop.*, 977 F.2d 834 (3d Cir. 1992) ..................................................... 16

*Miller v. Ind. Hosp.*, 843 F.2d 139 (3d Cir. 1988) ................................................................... 10

*Modern Woodmen of Am. v. Int'l Trust Co., Guardian*, 136 P. 806 (Colo. App. Ct. 1913) ................. 12

*Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592 (3d Cir. 1971) ................................................. 19

*Moss v. United States*, 101 F. Supp. 692 (W. D. Pa. 1951) ....................................................... 12

*Nat'l Council of Knights and Ladies of Security v. Garber*, 154 N.W. 512 (Minn. 1915) .................. 12

*Norton v. Poplos*, 443 A.2d 1 (Del. 1982) ........................................................................... 19

*Phoenix Life Ins. Co. v. LaSalle Bank N.A.*, No. 2:07-cv-15324, 2:08-cv-11562, 2009 WL 877684 (E.D. Mich. Mar. 30, 2009) ...................................................................................................... 18

*Ray v. United States*, 121 F.2d 416 (7th Cir. 1941) ................................................................ 12

*San Filippo v. Bongiovanni*, 30 F.3d 424 (3d Cir. 1994) ........................................................... 16

*St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309 (3d Cir. 1994) ................................. 16, 17, 20

*State Farm Mutual Automobile Ins. Co. v. Calhoun*, 112 So.2d 366 (Miss. 1959) ............................. 12

*Warnock v. Davis*, 104 U.S. 775 (1877) ............................................................................... 4

*William Whitman Company, Inc. v. Universal Oil Prods. Co.*, 125 F. Supp. 137 (D. Del. 1954) 11, 12, 13

*Work v. Am. Mut. Life Ins. Co.*, 67 N.E. 458 (Ind. Ct. App. 1903).................................................. 12, 18

*Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787 (6th Cir. 2009) ...................................... 12, 13, 19

**Statutes**

18 Del. C. § 2711 ..................................................................................................... 10

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................ 10

Fed. R. Civ. P. 56(f) ................................................................................................ 15

Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Plaintiff PHL Variable Insurance Company ("Phoenix") respectfully moves the Court to deny the motion for partial summary judgment filed by Defendants the Werther Family Insurance Trust 2006 and NatCity Trust Company of Delaware (D.I. 51), or to continue the deadline for Phoenix to respond by at least ninety (90) days.  Such relief will permit Phoenix to discover facts necessary to rebut the motion.

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

Bernard Werther ("Werther") and the Werther Family Insurance Trust 2006 (the "Werther Trust") made fraudulent representations on an application (the "Application") for a $10 million insurance policy (the "Policy") issued by PHL Variable Insurance Company ("Phoenix") insuring Werther's life.[1]  Upon discovering the fraud, Phoenix filed this lawsuit to rescind the Policy, which is owned by the Werther Trust.  NatCity Trust Company of Delaware ("NatCity") is the Werther Trust's "administrative trustee."  As part of its rescission action, Phoenix constructively tendered to the Court the premiums paid on the Policy.  Phoenix also requested that in effecting the Policy's equitable rescission, the Court should pay to Phoenix, out of the premiums tendered to the Court, an amount equal to the damages Phoenix suffered due to the fraud.  In other words, Phoenix requested that the Court, in determining how to best equitably return Phoenix and the Werther Trust to their respective status quo ante, make whole the defrauded party—Phoenix— before making whole the defrauding party—the Werther Trust.

The Werther Trust and NatCity (collectively "Defendants") have now brought a motion for partial summary judgment, acknowledging that the Policy should be rescinded due to the fraud, but seeking a judgment that Phoenix return the premiums paid on the Policy, plus interest, directly to the Werther Trust.  Defendants' Motion is, at best, premature.  At the outset of the

case, Defendants proposed that the parties depose Werther before investing significant time and expense seeking discovery from each other or other non-parties.[2]  Phoenix then embarked on what ultimately became a nearly year-long search to find Mr. Werther, which it finally did, at several thousand dollars cost and without Defendants' cooperation.

Specifically, almost immediately after the case was filed, Phoenix discovered that Werther—who claimed to be worth $38 million—had been evicted from his apartment for failing to pay $1,100 rent.[3]  After unsuccessfully attempting to locate Werther through traditional means, Phoenix retained a private investigator who spent three months following Werther's trail before finally serving Werther with a deposition subpoena in August 2009.[4]  During this time, Phoenix sought to work with Defendants to extend the scheduling order, due to the lengthy process involved with locating Werther.  Finding the discovery period's expiration to their advantage, however, Defendants promptly reneged on their agreement that discovery should initially focus on deposing Werther and filed the instant motion for summary judgment.  The parties have initiated Judge Sleet's discovery dispute procedures to resolve the issues surrounding the scheduling order.

While the record is sufficient for the Court to determine that the Policy should be rescinded, it is insufficient for a determination of how rescission should be effected.  While Phoenix can present evidence as to the fraud, Phoenix cannot present a full picture as to the fraud's scope or Defendants' complicity therein.  Accordingly, Phoenix files the instant motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure requesting that the Court deny

---

[1] *See* Excerpts from the Deposition of Bernard Werther ("Werther Dep."), attached as Exhibit 1, 19:17–23, 20:5–12, 83:14–17, 92:15–19.  All exhibits are attached to the Declaration of Jarrett E. Ganer filed concurrently herewith.
[2] *See* October 21, 2008 e-mail from John Seaman to Jarrett Ganer, attached as Exhibit 2.

[3] *See* Complaint for Eviction and Damages, Cause No. 08-18684, *Christopher M. Yeoman v. Anita Fomasier, Bernard Werther and All Others in Possession*, in the County Court in and for Broward County, Florida, attached as Exhibit 3.

Defendants' summary judgment motion as to the appropriate form of remedy, or continue the deadline for Phoenix to file a response by at least ninety (90) days.

The record also reflects that Defendants are not as "innocent" as they contend.  First, Defendants' effort to conflate the Werther Trust with NatCity is a red-herring.  While NatCity may have limited liability and obligations as an administrative fiduciary acting at the direction of others, the Werther Trust is a legal entity perfectly capable of bearing the costs of the fraud in which it engaged.  Second, according to Defendants' own motion, the Werther Trust was created by Werther for the purpose of obtaining the Policy.  While the evidence developed to date shows that it is far more likely that the Werther Trust was created by third-party investors for the purpose of wagering on Werther's life rather than by Werther himself, existence as a separate legal entity does not make the Werther Trust an innocent party.  Finally, serious unanswered questions exist surrounding the Trust's establishment and the role NatCity played in the Application's submission.

## FACTUAL BACKGROUND

### I.   Stranger Owner Life Insurance

The Policy was not obtained for the benefit of Werther or his family.  Rather, the Policy was obtained as part of a plan for a third party investor to profit upon Werther's death—a plan commonly referred to as a "Speculator Initiated Life Insurance" or "Stranger Originated Life Insurance" (a "STOLI" scheme).  A STOLI scheme is an illegal arrangement through which an investor directly or indirectly purchases life insurance on an individual in whose life the investor has no insurable interest.[5]  Broadly defined, "[a]n 'insurable interest' in the context of a life

---

[4] *See* Affidavit of Steve Sessler.
[5] The court in *Lincoln National Life Insurance Co. v. Calhoun*, 596 F. Supp. 2d 882 (D.N.J. 2009) described a typical STOLI scheme as follows:

insurance policy is an interest in having the insured life persist, as opposed to an interest only in the loss of that life." *First Penn. Pac. Life Ins. Co. v. Evans*, 313 F. App'x 633, 636 (4th Cir. 2009) (citing *Grigsby v. Russell*, 22 U.S. 149, 155 (1911)).   An insurance policy that lacks an insurable interest is illegal because "insurance procured upon a life by one in favor of one under circumstances of speculation or hazard amounts to a wager contract and is therefore void, upon the theory that it contravenes public policy." *Balt. Life Ins. Co. v. Floyd*, 91 A. 653, 656 (Del. 1914); *see Warnock v. Davis*, 104 U.S. 775, 779–82 (1877) (stating that where a party taking out a life insurance policy has no insurable interest in the life of the insured, the policy is "a mere wager" and a "speculative contrac[t] on human life").   Nevertheless, STOLI scams are rampant because, as the Delaware Supreme Court observed almost a century ago, "the legitimate scheme of life insurance is inclined to be distorted and to some it affords an invitation for a mischievous kind of gambling." *Balt. Life*, 91 A. at 656.

## II.   Fraud in Both the Werther Trust's Establishment and the Policy Application

According to Defendants' own supporting affidavit, sometime prior to the Werther Trust's formation, NatCity was approached by non-party Coventry,[6] as agent for lender LaSalle Bank, for the purpose of creating a life insurance trust to own a life insurance policy with premiums financed through loans obtained from LaSalle Bank.[7]   The Werther Trust was established on July 20, 2006, through a trust agreement allegedly executed by Werther, as the

---

An agent attempts to sell a life insurance policy to an elderly insurable candidate, and offers the candidate up-front cash in exchange for promising a future sale of the policy.  The agent informs the candidate that the candidate will be able to obtain the policy at virtually no cost to himself, because the agent has secured non-recourse financing to purchase the policy.  The candidate then acts as a nominal grantor of a life insurance trust that is used to apply for the policy.  At that time, the agent will tell the insured that, in all probability, the policy will be sold to investors for a price that will pay the loan and accrued interest, leaving a profit to split between the agent and the insured.

*Id.* at 885 (citations and internal quotations omitted).
[6] Phoenix's reference to "Coventry" includes Coventry Group, Inc., Coventry Capital I LLC, and their affiliates.

grantor; purportedly by several of Werther's family members, as the beneficial owners; by NatCity, as the trustee; and by Werther's son Jeffrey, as co-trustee.[8]  As some of these family members were young children—ages two to four—the signatures are clearly forgeries.[9]  NatCity, as trustee of the Werther Trust, submitted applications to Phoenix and other insurers seeking life insurance policies insuring Werther's life.[10]

Phoenix received the formal Application, dated July 20, 2009, seeking $10 million of insurance on Werther's life to be owned by the Werther Trust.[11]  The Application requested material information about Werther's background, income, and net worth.[12]  In response, Werther and the Werther Trust represented that Werther had a net worth of $38 million and annual income in excess of $200,000.[13]  These representations were false.[14]  Werther also misrepresented that he was not a convicted felon.[15]  Phoenix also requested information regarding the source of premiums and the intended purpose of the insurance.[16]  In response to clear and direct questions, both Werther and NatCity denied that premiums would be financed and stated that the insurance would be used for estate planning.[17]  However, NatCity has acknowledged that before the Werther Trust was even established, it was approached by Coventry for the purpose of establishing a trust that would own a premium-financed insurance policy.  While NatCity may

---

[7] *See* Affidavit of Carol Tino, D.I. 52 ("Tino Aff."), ¶5.  Coventry Capital is a life settlement company in the market of purchasing life insurance policies on the secondary market.  *See* www.coventry.com.
[8] It appears that Jeffrey Werther died shortly after this paperwork was completed.
[9] *See* Werther Dep., pp. 36–37 (testifying that the signature on the trust agreement did not appear to be his, that the signatures of other of his relatives were forgeries, and that other signatures did not appear to be those of three of his grand children whose current ages are four, seven and ten).
[10] *See* Application for Life Insurance, attached as Exhibit 4.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *See* Werther Dep., 19:17–23, 20:5–12, 83:14–17.
[15] *Compare* Ex. 4 *with* Werther Dep., 92:15-18.
[16] *See* Statement of Client Intent, attached as Exhibit 5.
[17] *Id.*

claim ignorance as to the misrepresentations regarding Werther's net worth, it has no defense to the misrepresentation regarding the premium financing, which was clearly within its knowledge.

Ultimately, based upon Werther and Defendants' misrepresentations, Phoenix issued the Policy with an effective date of August 9, 2006, and paid substantial commissions to the insurance agents responsible for the sale. Phoenix now seeks to rectify this scam by obtaining a declaratory judgment that the Policy is null, void and should be rescinded *ab initio* due to the fraudulent answers given in the Application. Defendants concede that the Policy should be rescinded,[18] as Werther admitted during his deposition that the statements regarding his net worth and income were lies.[19] Nevertheless, Phoenix and Defendants sharply disagree about how rescission should be effectuated.

Defendants move the Court to immediately refund 100% of the premiums paid to the Werther Trust, with interest. In other words, Defendants ask that the fraudulent bet be returned. Such an illogical outcome is not required by law, and cannot be allowed in equity. By contrast, Phoenix asks the Court to carefully undo Defendants' fraud by ordering that all premiums paid on the Policy be deposited with the Clerk of the Court until the Court can determine how to fairly dispose of them. To return to the pre-Policy status quo, Phoenix asks the Court to order that the Clerk pay Phoenix from the deposited premiums an amount equal to the commissions Phoenix paid upon the Policy's sale, and to award costs and attorneys' fees to Phoenix. The law permits the Court to order such an equitable dispensation. The evidence developed to date supports the Court allowing Phoenix to retain the premiums paid on the Policy. Moreover, if permitted to conduct further discovery, Phoenix will be able to more fully demonstrate that the equities in this case justify the dispensation of the premiums in the method that Phoenix proposes.

---

[18] D.I. 52, p.7.
[19] *See* Werther Dep., 19:17–23, 20:5–12, 83:14–17.

III.    **The Policy was Issued as Part of a Fraudulent Scheme in which both the Werther Trust and NatCity were Complicit**

While Phoenix expects that it will develop more evidence upon further discovery, the evidence developed to date is sufficient to defeat Defendants' motion for summary judgment. First and foremost, the Policy was not obtained by the Werther Trust for purposes of preserving Werther's estate as part of estate tax planning.  Quite simply, Werther has no estate to preserve as he is not a multi-millionaire, but an elderly man living on social security.[20]  Moreover, in this case, the misrepresentation regarding the source of funding for the premiums on the Policy is a critical point.  More specifically, in December 2005, the New York Insurance Department issued an advisory opinion stating that a STOLI arrangement very similar to that described in Carol Tino's affidavit would be void due to a violation of New York's insurable interest law, and for good reason.[21]  Insurance should be focused on the relationship between an insured seeking to protect against the economic consequences of the insured's death and an insurer providing these financial services to its client.  STOLI perverts this relationship by transforming an insurance policy from a hedge against premature death into an investment vehicle for investors to gamble on the lives of strangers.

A review of the circumstances surrounding the Werther Trust's establishment and the Policy application show exactly why these STOLI schemes are illegal and against public policy. First, Werther has testified that he was approached by a third-party with a proposition that would allow him to obtain free insurance and/or would allow him to profit upon the Policy's sale.[22] Werther then participated in the applications for several insurance policies, including the Phoenix Policy, whereby false information was provided to the insurers in order to obtain the policies

---

[20] *See* Werther Dep., 19:17–23, 20:5–12, 83:14–17, 92:15–19.
[21] N.Y. Ins. Dep't Opinion No. 05-12-15, available at http://www.ins.state.ny.us/ogco2005/rg051215.htm.
[22] *See* Werther Dep., 24:20–24.

owned by the Werther Trust.[23]   Although NatCity has disclaimed knowledge of the misrepresentations, NatCity apparently signed a blank Application and other policy documents.

For example, when Werther first signed the application on May 5, 2006, NatCity Vice President Kristine M. Neuhauser ("Neuhauser") had already signed—but not dated—the Application on behalf of the Werther Trust as the Policy owner.[24]  Neuhauser later postdated the Application.[25]  This fact is suspicious and troubling for multiple reasons.  First, NatCity signed the Application in its role as trustee for the Werther Trust, but, the Werther Trust had not yet been created.[26]  Second, as Defendants admit, by signing the form, NatCity represented that all statements made therein were "full, complete, and true to the best knowledge and belief of [NatCity]."[27]  Providing such an affirmation on a blank application is, at worst, evidence of complicity in the fraud and, at best, grossly negligent.[28]  In either event, Defendants vouched for the truthfulness of the representations in the Application.  Phoenix alleges that the Werther Trust and NatCity did so knowing that the representations were false or with reckless disregard for their accuracy.[29]  Further, as Werther is the grantor of the Werther Trust, his knowledge is imputed to the Werther Trust.

Moreover, as noted above, the Defendants knowingly made misrepresentations when they denied that the Policy premiums would be financed on the "Statement of Client Intent" form

---

[23] *See* AXA Equitable Life Insurance Company Application Part 2, attached as Exhibit 6; Jefferson Pilot Financial Application for Life Insurance Part 1, attached as Exhibit 7; Ex. 4.

[24] Application for Life Insurance, dated May 5, 2006, attached as Exhibit 8.

[25] *See* Ex. 4.

[26] *See* Certification and Acknowledgement of Trust Application, dated July 20, 2006, attached as Exhibit 9.

[27] *See* D.I. 52, pp. 5-6; Ex. 8.

[28] Moreover, the Application was not the only blank check signed by NatCity.  NatCity also provided the perpetrators of this STOLI scheme with blank and signed forms for variable premium allocation and for certifying the name and existence of the Werther Trust.  *See* Variable Life Premium Allocation, attached as Exhibit 10; Certification and Acknowledgement of Trust Agreement, undated, attached as Exhibit 11.  As on the Application, a date was assigned to Neuhauser's signature after Werther completed the Certification and Acknowledgement of Trust Agreement form.  *See* Ex. 9.

[29] Defendants' statement that Phoenix has "acknowledge[d] that [NatCity] had no knowledge of Mr. Werther's misrepresentations" is also patently false.  D.I. 52 p. 9.

signed by Werther and Neuhauser (as representative for NatCity and the Werther Trust) on July 25, 2006.[30]  In executing this form, each declared "that the statements made [were] complete and true to the best of my knowledge."[31]  But, the document indisputably contains at least one false representation.  Specifically, when asked if they "intend[ed] to finance any of the premium required to pay for this policy," both Werther and Defendants answered, "No."[32]  Yet, the Financing Agreement had already been executed.  A letter dated July 17, 2006, shows that the Financing Agreement, a "LaSalle Bank Policy Application and IDs," and a "Settlor's Acknowledgment" were sent to Neuhauser a week before she signed the "Statement of Client Intent."[33]  Moreover, Defendants' own affidavit states that NatCity was approached by Coventry for the specific purpose of creating trusts that would own premium financed policies.  As such, Defendants' representation is blatantly false.

It appears that Defendants have attempted to paper around this lie through the formation of sub-trusts that would actually be the party borrowing the funds to purchase the insurance policies.[34]  Indeed, Defendants admit that the sub-trusts were formed to borrow the premiums, with the Werther Trust purporting to assign the Policy to one of the sub-trusts for the purpose of collateralizing LaSalle's loan to the sub-trust.[35]  In other words, Defendants attempted to conceal from Phoenix the source of the premium payments by channeling the financing through the intermediary sub-trust.  Now, Defendants come before this Court, which is acting in equity in determining how to effect the Policy's rescission, and claim that the Court must return the premiums, *with interest*, to the Trust so that the lender and perpetrators of the fraud can be protected.  Protecting perpetrators of fraud is not the role of law or equity.

---

[30] *See* Ex. 5.
[31] *Id.*
[32] *Id.*
[33] *See* July 17, 2006 letter from Coventry to NatCity, attached as Exhibit 12.

# ARGUMENT

## I.  Summary Judgment is Proper on the Issue of Rescission

"Summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988); FED. R. CIV. P. 56(c).  It is well-established at common law that an insurance policy obtained in a fraudulent manner is voidable by the insurer upon proof of the fraud. *Carpenter v. Providence Wash. Ins. Co.*, 41 U.S. 495, 509 (1842).  The Delaware Insurance Code affirms this principle, stating in relevant part that misrepresentations, omissions, concealment of facts and incorrect statements prevent recovery under an insurance policy where they are (1) fraudulent; (2) material to the acceptance of the risk or hazard assumed by the insurer; or (3) where the insurer would not have issued the policy or contract but for the false representation, concealment, or omission.  18 *Del. C.* § 2711.

Werther has admitted that his net worth and income were misrepresented in the Application.[36]  Accordingly, Defendants concede that the Policy should be rescinded.  As such, the Court may now order that the Policy is rescinded, *ab initio*.  Nevertheless, genuine issues of material fact exist regarding the manner in which the contract should be rescinded.  Questions about the nature and extent of the fraud perpetrated on Phoenix are essential in determining how to equitably return the parties to the pre-Policy status quo.  As such, summary judgment as to the form of rescission at this stage of the discovery process would be premature.

---

[34] *See* Note and Security Agreement, attached as Exhibit 13.
[35] *See* Tino Aff. ¶¶ 11–12.
[36] *See* Werther Dep., 19:17–23, 20:5–12; 83:14–17.

## II.      The Court has Discretion to Order an Equitable Form of Rescission

In their motion for partial summary judgment, Defendants misconstrue controlling and persuasive case law to reach the conclusion that "as a matter of law, Phoenix cannot withhold premium refunds as an offset to commissions that Phoenix paid to its agents."   D.I. 52, p.1. Defendants are mistaken.

A party seeking contractual rescission must return the benefits it has received and substantially restore the status quo ante.   *E. States Petroleum Co., Inc. v. Universal Oil Prods. Co.*, 49 A.2d 612, 616 (Del. 1946) (citing *Hegarty v. Am. Commonwealth Power Corp.*, 163 A. 616 (Del. 1932)).   However, "[e]ven where [the rescinding party] has in fact received something under the contract, he is not always bound to return it."   *Hering v. Harris*, 175 A. 169, 173 (N.J. 1934) (citations omitted) (cited by the Delaware Court of Chancery in *E. States Petroleum*, 49 A.2d at 616, as stating an exception to the general rule).   The general rule of rescission, "like other rules of justice, must be so applied in the practical administration of justice as shall best subserve, in each particular case, the undoing of wrong, and the vindication of the right."   *Id.* This equitable approach to rescission was employed in *William Whitman Co., Inc. v. Universal Oil Products Co.*, 125 F. Supp. 137 (D. Del. 1954), where the court explained that it was not powerless to correct inequities brought about by fraud:

> [I]n a proceeding for rescission or cancellation of an instrument on the ground of fraud, the great equitable powers of the court are not primarily framed for the protection of the one guilty of the fraud, but the primary object is to correct the injustice done to the victim of the fraud.   Because, however, the court is a court of equity, it requires that he who seeks its aide must also 'do equity.'   The court must restore the other party to its original position so far as possible and see that even the defrauded party himself derives no unconscionable advantage from the transaction.

*Id.* at 160 (construing Illinois law) (Rodney, J.).[37]

Here, Phoenix, the victim of the fraud, has offered to do equity by depositing the Policy premiums into the registry until the Court determines how to fairly distribute them. Phoenix seeks no advantage. Instead, Phoenix simply seeks to make up for the sales commissions, litigation costs, and attorneys fees it has paid as a direct result of Defendants' fraud by retaining an equal portion of the premiums. Yet, Defendants suggest that the damage arising from these lost commissions and expenses is somehow Phoenix's fault: that Phoenix had a duty to investigate the veracity of the Application; and that Defendants can disavow any responsibility for misrepresentations *they affirmed* in documents *they signed and submitted* knowing that Phoenix would rely on them. D.I. 52, pp. 5, 14–16. The Delaware Court of Chancery scoffed at such an assertion in *Kelly v. International Re-Insurance Corp.*, 174 A. 267 (Del. 1934):

> It is with exceedingly poor grace that one who has furnished what he states in a true financial statement of business, says to him to whom it was furnished—'I told you it was true. But you should not have accepted and acted on my statement as an honest one. You should have investigated for yourself to see if I was deceiving you.'

---

[37] This decision is consistent with the common law rule that one is not entitled to a premium refund on a fraudulently procured insurance policy. *See, e.g., Wuliger v. United States*, 567 F.3d 787, 797 (6th Cir. 2009); *Ray v. United States*, 121 F.2d 416, 419 (7th Cir. 1941); *Henkel v. Stratton*, 612 F. Supp. 190, 193 (N.D. Ohio 1985); *Moss v. United States*, 101 F. Supp. 692, 693 (W.D. Pa. 1951); *Hohenschutz v. Knights of Columbus*, 186 S.W.2d 177, 178 (Ark. 1945); *DeLoach v. Ozark Life Ins. Co.*, 230 S.W. 268 (Ark. 1921); *Modern Woodmen of Am. v. Int'l Trust Co., Guardian*, 136 P. 806, 814-15 (Colo. App. Ct. 1913); *Columbian Nat 'l Life Ins. Co. v. Mulkey*, 91 S.E. 106, 106 (Ga. 1916); *Nat'l Council of Knights and Ladies of Sec. v. Garber*, 154 N.W. 512, 513 (Minn. 1915); *State Farm Mut. Auto. Ins. Co. v. Calhoun*, 112 So.2d 366 (Miss. 1959); *Home Ins. Co. v. Cavin*, 149 So. 800 (Miss. 1933); *Bosse v. Knights & Ladies of Sec.*, 220 S.W. 993, 995 (Mo. Ct. App. 1920); *Hellman v. Nat'l Council of Knights and Ladies of Sec.*, 200 S.W. 698 (Mo. Ct. App. 1918); *McDonald v. N. Benefit Ass'n.*, 131 P.2d 479 (Mont. 1942); *Marling v. Metro. Life Ins. Co.*, 1908 Ohio Misc. LEXIS 46, at *9–10 (Ohio Ct. C.P. 1908); *Edward G. Budd Bldg. & Loan Ass'n v. Kinsella*, 156 A. 577 (Pa. Super. Ct. 1931); *Elliott v. Knights of Modern Maccabees*, 46 Wash. 320, 326 (Wash. 1907). Furthermore, as courts have recognized, an insurer has no legal obligation to refund premiums paid on illegal wagering contracts, lacking an insurable interest. *See, e.g., Lewis v. Phoenix Mut. Life Ins. Co.*, 39 Conn. 100 (Conn. 1872); *Am. Mut. Life Ins. Co. v. Mead*, 79 N.E. 526, 528 (Ind. Ct. App. 1906); *Work v. Am. Mut. Life Ins. Co.*, 67 N.E. 458 (Ind. Ct. App. 1903); *Bruer v. Kan. Mut. Life Ins. Co.*, 75 S.W. 380 (Mo. Ct. App. 1903); *Endress v. Ins. Co.*, 1 Ohio Law Abs. 553 (Ohio Ct. App. 1923).

*Id.* at 271.  Defendants should not be permitted to take such a position and thereby shift all fault and expense to Phoenix.  Instead, by adopting the remedy Phoenix proposes, the Court will undo the damage caused by the fraud and substantially restore the status quo ante—as equity requires.

The remedy Phoenix suggests is not unprecedented.  Federal and state courts considering STOLI schemes like the one alleged here have determined that equity dictates that an insurer can offset commissions and expenses from premiums paid on the policy upon rescission.  *See, e.g., Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 797 (6th Cir. 2009); *Lincoln Life and Annuity Co. of N.Y. v. Teren*, No. 37-2008-83905-CU-CO-CTL, slip op. (Cal. App. Dep't Super. Ct. Aug. 27, 2009).  These courts have recognized the absurdity of the view Defendants advocate that would return premiums to a defrauder.  The United States Court of Appeals for the Sixth Circuit has flatly refused to sanction Defendants' position, stating:

> [A rule that] an insured who commits fraud may announce the fraud and receive a refund on any premiums paid to date—would have the perverse effect of reducing the defrauders' risk relative to honest policy holders; any defrauder could commit to paying premiums on his fraudulently procured policy knowing that if the premiums ever became unaffordable, he could declare his fraud and receive all of the previously paid premiums back.

*Wuliger*, 567 F.3d at 797.  Similarly, the San Diego County Superior Court for the State of California explained that the course of action Defendants urge would lead to a "heads I win, tails you lose situation'—heads, the fraud goes undetected and the policy owner collects a death benefit upon [the insured's] death or tails, the fraud is detected and the policy owner receives a premium refund on the fraudulently procured policies."  *Teren*, slip. op. at 7, ¶ 29.  These cases echo the sentiment expressed by the Delaware district court in *William Whitman*:  "[i]t cannot be that gross fraud, if it be the foundation of the contract, would go unpunished."  *William Whitman*, 125 F. Supp. at 152.

### III. A Rule 56(f) Continuance is Necessary to Rebut Defendants' Motion with Respect to the Appropriate Form of Rescission

Defendants attempt to place themselves beyond the equitable reach of these cases by professing that they "had no knowledge that any statements by Mr. Werther in the Application were false or misleading," and declaring that they are "innocent third parties who indisputably had no role in Mr. Werther's misrepresentations."  D.I. 52, pp. 5, 2.  Nevertheless, Defendants' *ipse dixit* cannot absolve them of wrongdoing—and cannot support summary judgment.  *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (stating that conclusory allegations and unsubstantiated assertions do not satisfy a movant's summary judgment burden).  It is undisputed that Werther's net worth and income were misrepresented on the Application.  But, the story does not end there.  Phoenix would seek to show that the Werther Trust itself was an instrumentality of a conspiracy to obtain fraudulent insurance policies for the benefit of third-party investors who lacked an insurable interest in Werther's life.

Defendants' knowledge of the misrepresentations at issue and the extent of their involvement in this fraud are unknown at this time.  Significantly, these facts are unknown because, *in accordance with Defendants' request*, discovery to this point focused on locating and deposing Werther before proceeding to more expansive discovery, rather than simply blindly proceeding with other party and third-party discovery.  This was logical and economical for both parties, as Werther's deposition would likely prove dispositive on the issue of misrepresentations in the application—as it indeed did.  Moreover, Werther's deposition was likely to shed light on the "who, what, where and how" of the fraud.  This was especially critical in this case as Defendants, despite being a trust for which Werther was the grantor and the trustee for that trust, assert that they had no obligation to examine the circumstances behind creating a trust that would

own $28 million in insurance insuring Werther's life[38] other than to collect a copy of Werther's drivers' license.

Because of the length of time it took to locate Werther and secure his deposition, Defendants now find themselves with a perceived scheduling advantage and seek to cut short discovery prior to its logical and reasonable conclusion. Defendants' misdirection should not be rewarded with a premature order of summary judgment. Phoenix seeks to keep discovery open to allow this case to fully develop before proceeding with motion practice or trial. Specifically, Phoenix requires additional discovery about the fraud perpetrated against it, about Defendants' knowledge of the misrepresentations, about what other third-parties might be involved, and about Defendants' and these third-parties' participation in procuring the Policy. This discovery will bring the equities into focus and show that Phoenix is entitled to the relief it seeks. Accordingly, Phoenix moves the Court to deny the motion for partial summary judgment (as to the rescission remedy) or continue the deadline for Phoenix to file a response.

In support of its motion, Phoenix submits the affidavit of David T. McDowell (the "McDowell Affidavit"). The McDowell Affidavit describes the information sought by Phoenix, the manner in which it will be obtained, how it will raise and reinforce genuine issues of material fact; and why Phoenix has so far been unable to obtain it. As explained below, the McDowell Affidavit satisfies Phoenix's Rule 56(f) burden.

### A.      <u>Rule 56(f) Standard</u>

"If [a party opposing summary judgment] believes that additional discovery is necessary, the proper course is to file a motion pursuant to Rule 56(f)." *Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d

---

[38] The Werther Trust also owns an $18 Million policy issued by Jefferson Pilot Life Insurance Company.

Cir. 1988)). Rule 56(f) permits the court to deny a motion for summary judgment or order a continuance to permit further discovery. FED. R. CIV. P. 56(f). A Rule 56(f) motion should be accompanied by an affidavit setting forth the reasons the party is unable to effectively oppose summary judgment. *Id.*; *Lunderstadt v. Colafella*, 885 F.2d 66, 70–71 (3d Cir. 1989). The party moving for relief under Rule 56(f) must "identify with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained." *Lunderstadt*, 885 F.2d at 71 (quoting *Dowling*, 855 F.2d at 140).

The decision to grant a Rule 56(f) motion lies in the sole discretion of the district court. *San Filippo v. Bongiovanni*, 30 F.3d 424, 432 (3d Cir. 1994). But, Third Circuit courts "usually grant properly filed Rule 56(f) motions as a matter of course." *St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994). "This is particularly so when there are discovery requests outstanding or relevant facts are under the control of the [party moving for summary judgment]." *Abington Friends*, 480 F.3d at 257. "If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the [summary judgment] motion." *Abington Friends*, 480 F.3d at 257 (citing *Miller v. Beneficial Mgmt. Cop.*, 977 F.2d 834, 845–46 (3d Cir. 1992)).

Third Circuit courts further recognize that Rule 56(f) relief is appropriate when discovery is incomplete due to an agreement between the parties. *See, e.g., Kosmoski v. Express Times Newspaper*, No. 08-CV-1555, 2009 WL 2603152, at *5 (E.D. Pa. Aug. 24, 2009) (granting Rule 56(f) motion where discovery was incomplete because plaintiff did not comply with the discovery deadlines based on a belief that the parties had agreed to stay discovery); *McNellis v. Pfizer, Inc.*, No. 05-1286, 2005 WL 3752269, at *11–12 (D.N.J. Dec. 29, 2005) (granting Rule 56(f) motion and denying summary judgment where the record was incomplete because plaintiff had agreed to defendants' request for a stay of discovery). For example, in *St. Surin v. Virgin*

*Islands Daily News, Inc.*, 21 F.3d 1309 (3d Cir. 1994), the plaintiff had not been able to complete discovery because he "agree[d] to postpone depositions for the convenience of defense counsel." *Id.* at 1315 n.3.  The United States Court of Appeal for the Third Circuit held that this agreed delay justified a Rule 56(f) continuance.  *Id.* at 1315.  As the court stated, "[the plaintiff] should not suffer from a failure of proof caused by his accommodation of [the defendants'] requests for delay."  *Id.*

**B.      Rule 56(f) Proof**

(1)      Rule 56(f) Relief Will Permit Phoenix to Obtain Information About the Nature and Scope of the Fraud

Phoenix seeks specific information that will rebut Defendants' motion for summary judgment by revealing the scheme's illegal nature and broad scope to procure the Policy and transfer it for a profit.  First, Phoenix needs discovery about the Werther Trust's intent to transfer the Policy.  Second, Phoenix requires further discovery regarding Defendants' participation in procuring the Policy, and their knowledge that the statements in the Application were false or misleading.  Third, Phoenix needs additional time to discover information about the existence of an agreement between Werther or the Werther Trust and any third party, at the time of the Policy's inception, to sell or assign the beneficial interest in the Policy.

Phoenix will obtain this information by deposing individuals who may have knowledge of such matters, including:  David Claus (who Werther testified is responsible for preparing his false financial statements), Jason Mitan (Claus's colleague), Peter Pardos, (who Werther testified approached him about the Policy), and representatives of NatCity, Coventry, and La Salle Bank.  Phoenix will also pursue the information it needs through written discovery and by gathering any records of communications to and from the aforementioned individuals and parties regarding Werther, the Policy or the Werther Trust.

(2)     The Information Will Rebut Summary Judgment by Revealing a Lack of Insurable Interest in the Policy and Confirming that the Equities Support Offsetting Refunded Premiums

Discovery about Werther's intent, Defendants' participation, and the existence of an agreement to sell or assign the Policy on the secondary market will show that the Policy lacked an insurable interest at the time of its inception.   As stated above, under Delaware law, an insurance policy acquired by a person without an insurable interest in the insured's life is a wager contract and, therefore, void as against public policy.   *Supra* at 3-4 (citing *Balt. Life Ins. Co. v. Floyd*, 91 A. 653, 656 (Del. 1914)).   The insurable interest requirement is violated if a person "lends himself to one without any, as a cloak to what is, in its inception, a wager."   *Grigsby v. Russell*, 222 U.S. 149, 156 (1911) (Holmes, J.).   In other words, if the Policy was procured with an intent to transfer the beneficial interest to an investor in the secondary market, it is void.   *See Phoenix Life Ins. Co. v. LaSalle Bank N.A.*, No. 2:07-cv-15324, 2:08-cv-11562, 2009 WL 877684, at *11 (E.D. Mich. Mar. 30, 2009).

For these reasons, discovery about the intent to transfer the Policy, Defendants' participation in procuring it, and the existence of any agreement between Defendants and third-parties will show that the Policy is a wagering contract that lacked an insurable interest at the time of its inception.   This showing will defeat the summary judgment remedy Defendants propose, because courts have long recognized that an insurer has no legal obligation to refund premiums on illegal wagering contracts, lacking an insurable interest.  *See, e.g., Lewis v. Phoenix Mut. Life Ins. Co.*, 39 Conn. 100, 102 (1872); *Endress v. Ins. Co.*, 1 Ohio Law Abs. 553 (Ohio Ct. App. 1923); *Am. Mut. Life Ins. Co. v. Mead*, 79 N.E. 526, 528 (Ind. Ct. App. 1906); *Work v. Am. Mut. Life Ins. Co.*, 67 N.E. 458 (Ind. Ct. App. 1903); *Bruer v. Kansas Mut. Life Ins. Co.*, 75 S.W. 380 (Mo. Ct. App. 1903).   As such, the Court should allow Phoenix the discovery needed to make this showing.  *Cf. Lincoln National Life Insurance Co. v. Calhoun*, 596 F. Supp. 2d 882

(D.N.J. 2009) (denying motion to dismiss because insurer was "entitled to proceed and attempt to discover whether, and with whom, Calhoun had arranged to sell the Policy at the time the Application was submitted").

In addition, Phoenix seeks discovery about Defendants' participation in procuring the Policy and their knowledge that the Application was false because such information will show that Defendants are not innocent parties to the fraud. This showing will raise a genuine issue regarding the return of premiums because, "[r]escission is an equitable remedy, and equitable claims are subject to the defense of unclean hands." *Wuliger*, 567 F.3d at 797; *see also Norton v. Poplos*, 443 A.2d 1, 4 (Del. 1982) (describing rescission as an equitable remedy). When a party who seeks equitable relief "has violated conscience or good faith or other equitable principles in his conduct, then the doors of the Court of Equity should be shut against him." *Healy v. Healy*, No. 19816, 2006 WL 3289623, at *2 (Del. Ch. Oct. 31, 2006) (quoting *Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592, 598 (3d Cir. 1971)). And, "[f]raud will typically suffice to hold a party ineligible for relief under the unclean hands doctrine." *Id.* (citations omitted).

The remedy sought by Defendants is rescission with an unqualified return of all premiums—no matter how egregious the fraud. It is a remedy that provides no relief to the victim, the defrauded insurer. This approach allows the wrongdoers to act with impunity: even if caught, the premiums invested in the fraud are returned. The *Wuliger* and *Teren* courts roundly rejected this result. *Supra* at 12-13 (citing *Wuliger*, 567 F.3d at 797; *Teren*, No. 37-2008-83905-CU-CO-CTL, slip op. at 7). Again, "[i]n fashioning a remedy for unclean hands, the Court has a wide range of discretion in refusing to aid the 'unclean litigant.'" *Monsanto*, 456 F.2d at 598.

(3)     The Information was not Previously Obtained Because the Parties Agreed to Postpone Certain Discovery

Phoenix's inability to completely respond to the Motion at this time is not the result of

negligence or delay.  Phoenix has not obtained the discovery it needs because it relied, in good faith, on an agreement between the parties to delay expansive party and non-party discovery until Werther was deposed.  This discovery approach was Defendants' idea.  The parties reasonably believed that Werther's deposition would narrow the issues.  It did.  Most importantly, it established that the Policy should be rescinded as the parties now agree.  Discovery can now be limited to the matters Phoenix describes in this Motion.  Because Phoenix reasonably relied on its agreement with Defendants to postpone expansive discovery until Werther was deposed, and because Phoenix has a plan to promptly complete discovery, the Court should grant Phoenix an opportunity to gather the information that is needed to defeat Defendants' motion.  *See St. Surin*, 21 F.3d at 1314–15; *Kosmoski*, 2009 WL 2603152, at \*5; *McNellis*, 2005 WL 3752269, at \*11–12.

## <u>CONCLUSION</u>

Phoenix respectfully requests that the Court order the Policy rescinded, ab initio, but deny Defendant's Motion for Summary Judgment as to the form of relief.  Alternatively, Phoenix requests that the Court grant Rule 56(f) relief to allow Phoenix 90 additional days to take discovery in order to present relevant evidence to the Court.  In the further alternative, Phoenix requests that this Court grant it additional time to more fully respond to Defendant's Motion.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____
Richard D. Heins (I.D. #3000)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rheins@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff PHL Variable
Insurance Company*

*Of Counsel:*

David T. McDowell
Jarrett E. Ganer
EDISON, MCDOWELL & HETHERINGTON LLP
3200 Southwest Freeway, Ste 2920
Houston, Texas 77027
(713) 337-5580
david.mcdowell@emhllp.com
jarrett.ganer@emhllp.com

Dated: October 21, 2009

## AVERMENT OF COUNSEL

STATE OF TEXAS      )
                         ) ss:
COUNTY OF HARRIS   )

I, Jarrett E. Ganer, hereby aver that I contacted opposing counsel to discuss the matters set forth in this motion.  However, my good faith efforts to reach agreement on these matters have ended in an impasse that now requires the Court's intervention.

By: _____

Jarrett E. Ganer*
(Texas Bar No. 24055520)
Edison, McDowell & Hetherington LLP
3200 Southwest Freeway, Ste 2920
Houston, Texas 77027
Telephone: (713) 337-5580
Telecopier: (713) 337-8850
jarrett.ganer@emhllp.com
* Admitted pro hac vice

Subscribed to and sworn to before me this 21st day of October, 2009

_____
Notary Public

VICTORIA G. HAYES
Notary Public, State of Texas
My Commission Expires
April 26, 2013